# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
January 13, 2023

Lyle W. Cayce
Clerk

No. 21-51234

IN THE MATTER OF CHAMPION PRINTING & COPYING, L.L.C.;
*formerly doing business as* JERRY HAYES PHOTOGRAPHY

*Debtor*,

JOHN PATRICK LOWE,

*Appellant*,

*versus*

WILLIAM B. GAMMON; GAMMON LAW OFFICE,

*Appellees*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:21-MC-636
_____

Before STEWART, WILLETT, and OLDHAM, *Circuit Judges*.

PER CURIAM:*

Jerry Hayes and United States Trustee John Patrick Lowe (the "Trustee") appeal the district court's order holding that William Gammon

---

* This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

did not commit legal malpractice in filing what a Texas district and appellate court eventually declared a "groundless" suit. Because we hold that no reasonably prudent attorney could have filed this suit, and it caused his client to be sanctioned, we REVERSE and REMAND to the district court for the calculation of damages.

## I. Background
### A. *State Court Proceedings*

Hayes worked as a high-end wedding photographer at a company he co-owned, Champion Printing & Copying LLC ("Champion"). Champion was usually retained by wedding vendors, such as florists, to take photos of their work exclusively at weddings. Jennifer Nichols and Jennifer Lindberg worked as photographers at the same type of weddings as Hayes, except they functioned as traditional wedding photographers taking photos of the entire event. Nichols and Lindberg had exclusivity clauses in their contracts, preventing other photographers from taking pictures at weddings they worked. After some disputes with Nichols and Lindberg over enforcement of the exclusivity clauses—including at least one instance in which Hayes accused them of forcing a client to fire him—Hayes contacted William Gammon of Gammon Law Office about potentially representing Champion in a suit against Nichols and Lindberg.

After their consultation, Gammon agreed to take Hayes' case and sued Nichols and Lindberg on behalf of Champion in Travis County district court, alleging claims of conspiracy to restrain trade under Texas Business and Commerce Code § 15.05 (a) and (c) and tortious interference with existing and prospective contracts. The state court ultimately granted summary judgment in favor of Nichols and Lindberg. Shortly thereafter, Nichols and Lindberg filed a motion for sanctions against: (1) Champion, (2) Hayes, (3) the attorneys that filed suit on their behalf from Gammon, and (4) the Gammon Law Office. The state court granted the motion for

sanctions, but only as to Champion, holding that Champion "knew or should have known that it was groundless to assert that . . . two local photographers, control [the] worldwide high-end wedding industry about which he pled." Furthermore, it held that Hayes' social media activity[1] evidenced "that he authorized the lawsuit and . . . pleadings and motion in bad faith and for the improper purpose of discrediting [Nichols and Lindberg] to gain a competitive advantage over them." (citing Tex. Civ. Prac. & Rem. Code § 10.001; Tex. R. Civ. P. 13).

Champion appealed the judgment and sanctions to the Texas Court of Appeals. The appellate court upheld the judgment and imposition of sanctions, holding that Champion "(1) made groundless assertions of facts, and (2) brought the lawsuit for improper purposes." The appellate court similarly observed that Champion knew "Nichols and Lindberg did not control a significant market share of the international . . . wedding industry and that an antitrust cause of action based on this fact situation was groundless." Champion filed Chapter 7 bankruptcy in federal court after the Texas Supreme Court denied its petition for review of the appellate decision.

B.  *Bankruptcy Proceedings*

Nichols and Lindberg filed the only proof of claim in Champion's bankruptcy case, based on their $41,518.75 sanction award. In response, the Trustee filed suit in bankruptcy court against Gammon on behalf of Champion, alleging legal malpractice among other things. All claims except legal malpractice were successfully dismissed. The Trustee argued that Gammon knew or should have known that Champion's lawsuit was groundless and his decision to file the lawsuit constituted legal malpractice.

---

[1] Hayes' social media activity included defamatory Facebook posts about Nichols and Lindberg and public advertisement of his pending suit against the photographers, which went on to garner public reaction.

The Trustee urged the bankruptcy court to adopt the holdings of the state trial and appellate courts, which had already held that the pleadings were groundless. He maintained that the bankruptcy court lacked authority to depart from the state courts on this issue. The bankruptcy court, nonetheless, held proceedings on the Trustee's malpractice claim against Gammon.

In accordance with Texas law, both the Trustee and Gammon brought competing experts on their respective malpractice theories.[2] The bankruptcy court concluded that the Trustee's expert relied substantially on the state court holdings to demonstrate that Gammon negligently filed the complaint which led to Champion's eventual sanctioning. It concluded that Gammon's expert provided independent analysis on all the claims, their elements, selected case law, and the original state court petition in arguing that a reasonably prudent attorney could have filed Champion's lawsuit. Ultimately, it noted that the Trustee's expert, in reliance on the original state courts' holdings, failed to demonstrate "the standard of care or produce an opinion based on what could have or should have been known to [Gammon] when the state court suit was filed." It explained that "[b]ecause Texas law could be read to require expert testimony on causation and the standard of care in a malpractice case, the Trustee has failed to carry his burden and cannot succeed on a malpractice claim."

Because the malpractice action was not a "core proceeding" arising under Title 11, the bankruptcy court was unable to enter a final judgment.[3]

---

[2] *See Cantu v. Horany*, 195 S.W.3d 867, 873 (Tex. App.—Dallas 2006, no pet.) (noting that "a plaintiff in a legal malpractice suit is required to present expert testimony regarding causation and the standard of skill and care ordinarily exercised by an attorney").

[3] *See* 28 U.S.C. § 157(c)(1) (permitting bankruptcy courts to "hear a proceeding that is not a core proceeding," but requiring that it "submit proposed findings of fact and conclusions of law to the district court").

Instead, it submitted its findings of fact and conclusions of law to the district court to aid in its review.

### C. *District Court Review*

At the district court proceedings, the Trustee argued that the bankruptcy court: (1) "used an inconsistent standard of review," (2) "mischaracterized the Trustee's legal theory," (3) "mischaracterized certain portions of the expert testimony," (4) "erroneously 're-tried the merits of the underlying state court action,'" and (5) "failed to evaluate the claim under the 'obvious-negligence' standard." The district court disagreed and adopted the bankruptcy court's findings of facts and conclusions of law. In doing so, it held that the bankruptcy court correctly: (1) identified and applied the proper objective standard to the case, (2) held that the state court proceedings did not bind it on the issue of malpractice, and (3) concluded that the Trustee failed to establish that Gammon breached his duty and caused the Trustee's injury. In accord with the bankruptcy court's determination, the district court ordered that the Trustee take nothing.

On appeal, the Trustee argues that the district court erroneously applied a subjective duty of care standard—instead of the objective standard that Texas law requires—when evaluating Gammon's decision to file Champion's suit. Should we hold in his favor regarding duty and breach, he also contends that the district court erred in concluding that he failed to establish that Gammon caused the imposition of sanctions against Champion. Finally, he argues that damages were correctly calculated in the bankruptcy court's proposed findings and conclusions, and asks that we award that amount on appeal.

## II. Standard of Review

Generally, "[w]e review the decision of a district court, sitting as an appellate court, by applying the same standards of review to the bankruptcy

court's findings of fact and conclusions of law as applied by the district court." *Matter of Monge*, 826 F.3d 250, 254 (5th Cir. 2016). Here, however, "the bankruptcy court submitted only *proposed* findings of fact and conclusions of law to the district court pursuant to 28 U.S.C. § 157(c)(1)." *Id.* (emphasis in original). "Unlike the district court, then, this court does not review the bankruptcy court's proposed findings of fact and conclusions of law *de novo* but, instead, we review the district court's findings of fact for clear error and its conclusions of law *de novo*." *Id.* Clear error occurs where a finding is "not supported by substantial evidence." *Parkcrest Builders, LLC v. Liberty Mut. Ins. Co.*, 26 F.4th 691, 695 (5th Cir. 2022).

### III. Discussion

Under Texas law, "[a]n attorney malpractice action . . . is based on negligence." *Cosgrove v. Grimes*, 774 S.W.2d 662, 664 (Tex. 1989). To prevail, the client must prove three basic elements: "(1) the lawyer owed a duty of care to the client; (2) the lawyer breached that duty; and (3) the lawyer's breach proximately caused damage to the client." *Rogers v. Zanetti*, 518 S.W.3d 394, 400 (Tex. 2017). "A plaintiff must generally present expert testimony to establish the breach and causation elements." *Edwards v. Dunlop-Gates*, 344 S.W.3d 424, 432 (Tex. App.—El Paso 2011) (citing *Alexander v. Turtur & Assocs., Inc.*, 146 S.W.3d 113, 117, 119–20 (Tex. 2004) ("*Turtur*"). Although "breach of the standard of care and causation are separate inquiries, . . . an abundance of evidence as to one cannot substitute for a deficiency of evidence as to the other." *Id.*

In analyzing breach, courts hold lawyers "to the standard of care which would be exercised by a reasonably prudent attorney." *Cosgrove*, 774 S.W.2d at 664. "The standard is an objective exercise of professional judgment, not the subjective belief that his acts are in good faith." *Id.* at 665. Put simply, courts must consider whether the allegedly negligent attorney made "a reasonable inquiry in the legal and factual basis of the claim at the

time the suit was filed." *Loeffler v. Lytle Indep. Sch. Dist.*, 211 S.W.3d 331, 348 (Tex. App.—San Antonio 2006); *see also Barnes v. Kinser*, 600 S.W.3d 506, 510 (Tex. App.—Dallas 2020) ("Sanctions may not be imposed based on the legal merit of a pleading or motion . . . The question is whether, using an objective standard, the party and its counsel made a reasonable inquiry into the legal and factual basis of the claim before filing it.").

### A.     *Expert Testimony at Trial*

We first address whether the district court correctly concluded that the Trustee's expert, James McCormack, failed to put forward a theory on Gammon's breach of the duty he owed to Champion and Hayes. If true, that error proves fatal in a Texas legal malpractice action. *See Edwards*, 344 S.W.3d at 432; *Cantu*, 195 S.W.3d at 873. Accordingly, the district court halted further analysis regarding the elements of legal malpractice after concluding that McCormack failed to meet his burden. We disagree with the district court's conclusion that McCormack merely relied on prior state court proceedings, and instead recognize that he provided an opinion regarding: (1) the duty of care owed by Gammon; and (2) the subsequent breach of that duty by Gammon.

As to the duty element, McCormack testified that "[i]t is undisputed that [Champion] and Gammon had an attorney-client relationship . . . during all relevant times. As such, Gammon owed legal duties under Texas law." Regarding breach, he explained that "Gammon breached the duty of care . . . by filing and pursuing a frivolous suit against the Nichols and Lindberg defendants . . . Further, Gammon subjected his client to unreasonable attorneys' fees and litigation-related expenses." He further stated that the state trial court's omission of Gammon from the sanctions is not relevant to whether he should have been sanctioned in the first place:

> Regardless of whether the trial court would have or should have included Gammon as a party subject to its monetary sanction, Gammon was not excused by that omission for responsibility under the duty of care (or other Texas law, including Rule 3.01 and the statutes governing sanctions for frivolous actions) in initiating and pursuing what the courts concluded was a groundless lawsuit.

Because McCormack proffered an expert opinion on the duty and breach elements for the Trustee's legal malpractice claim, we hold that the Trustee met his burden under Texas law. We now evaluate whether the record demonstrates that Gammon committed legal malpractice when he filed Champion's suit.

### B.    *Duty and Breach*

At issue is whether the district court erroneously concluded that Gammon did not breach his duty when he filed a suit that ultimately led to Champion's sanctions. The Trustee contends that Gammon "knew or should have known" that the initial filing was groundless and asserts that no "reasonably prudent" attorney would have done the same. He argues that, in conducting routine research on antitrust actions, a reasonably prudent attorney would have discovered that an antitrust cause of action requires pleading facts of significant market control and injury. He also maintains that no amount of research or investigation would have driven a reasonably prudent attorney to conclude that Nichols and Lindberg had the type of control over the wedding photography market that would potentially support an antitrust lawsuit. We agree.

Preliminarily, we note that Gammon conceded that he owed a duty to Champion because he accepted Champion's case and filed the initial pleading in state court. So, we next gauge whether a reasonable attorney could have filed this suit with what Gammon had at his disposal when he

initially filed it. *See Cosgrove*, 774 S.W.2d at 664 ("The jury must evaluate [an attorney's] conduct based on the information the attorney has at the time of the alleged act of negligence."). More specifically, we consider whether a reasonable attorney could have filed this suit after a reasonable factual and legal inquiry into what it would require. *See Barnes*, 600 S.W.3d at 610.

Gammon filed claims under Texas Business and Commercial Code § 15.05(a) and (c). Those causes of action required him to consider: (1) the size of the relevant market and (2) the degree of control that the alleged violators exercised in that market. Texas law also provides that plaintiffs cannot "demonstrate the unreasonableness of a restraint merely by showing that it caused [one person] economic injury." *Regal Entm't Grp. v. iPic-Gold Class Entm't, LLC*, 507 S.W3d 337, 348 (Tex. App.—Houston [1st Dist.] 2016, no pet.); *see also Coca-Cola Co. v. Harmar Bottling Co.*, 218 S.W.3d 671, 689 (Tex. 2006) (holding that to prevail in a Texas antitrust suit, "there must be evidence of demonstrable economic effect, not just an inference of *possible* effect" (internal quotation and citation omitted) (emphasis in original)). Lastly, Texas law explains that "[i]n order to successfully allege injury to competition, a . . . claimant may not merely recite the bare legal conclusion that competition has been restrained unreasonably. At a minimum, the claimant must sketch the outline of the antitrust violation with allegations of supporting factual detail." *In re Memorial Hermann Hosp. Sys.*, 464 S.W.3d 686, 709–10 (Tex. 2015).

Here, Gammon breached his duty to Champion by filing a state antitrust claim that no reasonable attorney could have filed after a cursory inquiry into Texas law. As previously stated, we consider whether a reasonable attorney would have pursued this case after a reasonable *factual* and *legal* inquiry. *See Barnes*, 600 S.W.3d at 610. We begin with Gammon's factual inquiry. He had the following information at his disposal in deciding whether to sue: (1) the details of the disputes between Hayes, Nichols, and

Lindberg, (2) letters from the various vendors and a meeting with them discussing the effect of Nichols and Lindberg's exclusivity clauses on the Austin event-planning industry, (3) a letter from Nichols and Lindberg's attorney, and (4) Hayes' statements.

As for Gammon's legal inquiry, he never testified to personally conducting significant research into the antitrust cause of action, but his associate, Read, attested to having researched at least one case: *Apani Sw., Inc. v. Coca-Cola Enter.*, 300 F.3d 620 (5th Cir. 2002). When opposing counsel asked Read what stuck out about *Apani*, he highlighted a quote about the geographic requirements for an antitrust cause of action. At the very least, Read's testimony indicates that a reasonable attorney would have had the guidance of *Apani* in deciding whether there was enough of a factual and legal basis to file a state antitrust suit against Nichols and Lindberg.

In *Apani*, we held that plaintiffs alleging restraint of trade based on exclusivity must: (1) identify the relevant product market; (2) identify the relevant geographic market; and (3) demonstrate that the "competition foreclosed by the arrangement constitutes a substantial share of the relevant market." *Apani*, 300 F.3d at 625 (internal quotations and citation omitted). Here, no reasonable attorney could have concluded that each element was satisfied based on the facts Gammon accumulated before suing. Specifically, the third element—demonstrating that a substantial share of the relevant market was foreclosed—was a nonstarter as the evidence he had just suggested the fear of a "negative impact" by the exclusivity clauses at issue. Furthermore, the record fails to support that there was a factual or legal basis for a reasonably prudent attorney to reason that, in an antitrust cause of action, the relevant geographic market can be as small as Austin, Texas, or

that the relevant product market can be as specific as high-end wedding photography.[4]

True, what Gammon had in filing Champion's lawsuit was more than nothing. But it still fails to approach what a reasonable attorney would have needed to file a complex state antitrust lawsuit based on the behavior of two local photographers in Austin, Texas. At best, he could have successfully proven that Nichols and Lindberg interfered with his business. But that is inadequate to support an antitrust cause of action under Texas law. *See Harmar Bottling Co.*, 218 S.W.3d at 689. Ultimately, a reasonable inquiry into the evidence he had and the law that governed a state antitrust action would have stopped a reasonably prudent attorney in his tracks before suing. Because Gammon pressed on with a groundless suit, we hold that he breached the duty he owed to Champion. We move on to assessing whether Gammon's breach was the proximate cause of Champion's sanctions.

### C.　*Causation*

Texas law provides two elements for proximate cause: cause in fact and foreseeability. *See Akin, Gump, Strauss, Hauer & Feld, LLP v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 122 (Tex. 2009). "Cause in fact is established when the act or omission was a substantial factor in bringing about the injuries, and without it, the harm would not have occurred." *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 799 (Tex. 2004). While foreseeability "asks whether the harm incurred should have

---

[4] We note Gammon's reliance on *Star Tobacco, Inc. v. Darliek*, 298 F. Supp. 2d 436 (E.D. Tex. 2003), where we held that plaintiffs could prevail on a § 15.05(c) antitrust claim if they established that there was an "agreement not to deal with *any single* competitor." *Id.* at 443. However, that case featured alleged bad-faith dealings among large tobacco companies, each with a significant share of the respective market. That simply is not reasonably analogous here, where Champion, Nichols, and Lindberg are three small businessowners with no clearly established geographic or product market.

been anticipated and whether policy considerations should limit the consequences of a defendant's conduct." *Rogers*, 518 S.W.3d at 402. To satisfy this element, plaintiffs must prove that "the harm incurred should have been anticipated" by the defendant. *Id.*

Gammon argues that the Trustee cannot establish cause in fact because: (1) the Trustee's expert failed to do so and (2) Hayes' social media activity was an intervening cause in the state court's decision to sanction Champion. We disagree. Gammon fails to explain why this court requires expert testimony on causation in these circumstances. After reviewing Texas case law, it clarifies that expert testimony is only necessary to discern difficult causation questions during a jury trial. *See, e.g.*, *Rogers*, 518 S.W.3d at 405 (noting that expert testimony for the causation element is only required where "the causal link is beyond the jury's common understanding"); *Turtur*, 146 S.W.3d at 120 (requiring expert testimony where "the errors allegedly made . . . in the preparation . . . of the admittedly complex . . . underlying proceeding were not so obviously tied to the adverse result as to obviate the need for expert testimony"). Here, Gammon's alleged error is "so obviously tied" to the adverse result at issue that we do not require an expert to explain the causal link. *Turtur*, 146 S.W.3d at 120. Put differently, without Gammon filing this suit, Champion would never have been sanctioned. Our conclusion is also supported by the fact that the sanctioning court relied on the groundless pleading as one of the primary grounds for sanctioning Champion.

Gammon's remaining argument is that Hayes' social media activity was the actual cause in fact for Champion's sanctions. The record does not support Gammon's contention. In its findings in support of sanctions, the state trial court clarified that:

No. 21-51234

> Sanctions are also appropriate against Plaintiff under Chapter 10 and Rule 13 because Plaintiff knew or should have known that it was groundless to assert . . . that Defendants, two local photographers, control worldwide high-end wedding industry about which he pled and because his pronouncements online about the lawsuit are evidence that he authorized the lawsuit . . . in bad faith and for the improper purpose of discrediting Defendants to gain a competitive advantage over them.

The trial court's explanation proves that Champion's sanctions stemmed from *both* the groundless pleading *and* Hayes' social media activity—not simply one or the other. Put another way, Gammon's filing of the groundless suit "was a substantial factor in bringing about [Champion's] injuries, and without it, the harm would not have occurred." *IHS Cedars*, 143 S.W.3d at 799. Therefore, we conclude that Gammon is the cause in fact of Champion's sanctions.

On foreseeability, the Trustee contends that the trial court erred in concluding that he must prove that Gammon had "knowledge of the future outcome of" Champion's state court case. Instead, he asserts that Texas law "does not require that [Gammon] anticipate the precise consequences of [his] actions—only that the injury be of such a general character as might reasonably have been anticipated by reasonable attorneys." We agree. Here, Texas law expressly provides for sanctions when attorneys file groundless pleadings. *See* Tex. Civ. Prac. & Rem. Code § 10.001. In accordance with state law, Gammon should have anticipated that sanctions could stem from his filing of a clearly frivolous state antitrust suit. Because Gammon satisfies the cause in fact and foreseeability elements, we hold that he was the proximate cause for Champion's sanctions. We address damages next.

D.   *Damages*

The Trustee agrees with the damages calculation provided in the bankruptcy court's alternate conclusions. However, the district court never adopted that part of the bankruptcy court's conclusions because it agreed with the bankruptcy court's primary conclusion. Therefore, the district court never ruled on damages. Because the district court was not sitting as an appellate court, our jurisdiction is limited to the district court's order. *See Matter of Monge*, 826 F.3d at 254. Accordingly, we remand to the district court to rule on what damages the Trustee should be awarded.

## IV.   Conclusion

For the foregoing reasons, we REVERSE the judgment and REMAND to the district court to calculate damages.